IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ASHLEY B. ISAAC, § | |
| § | |
| Plaintiff, § | |
| v. § | Civil Action No. C-05-437 |
| § | |
| NUECES COUNTY, TEXAS, § | |
| § | |
| Defendant. § | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On this day came on to be considered Defendant's Motion for Summary Judgment (D.E. 41). For the reasons stated herein, the Court GRANTS the Motion.

**I.   Jurisdiction**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**II.   Background**

    **A.   Factual Background**

The following facts are not in dispute:

On or about March 24, 1986, Plaintiff Ashley B. Isaac, an African-American male, began working as a corrections officer for Defendant Nueces County. (Pl.'s Third Am. Compl. ¶ 10; see also Peralta Aff. at 1.) He was later promoted to the position of Training Sergeant in the Training Division. (Pl.'s Third Am. Compl. ¶ 10; see also Peralta Aff. at 2.) In 2003, Defendant decided to disband its Training Division, and on April 7, 2003, it notified Plaintiff in writing that:

> Effective April 30, 2003, [Plaintiff] will be reassigned to the Patrol Division. The reason for the reassignment is "[b]udget cuts of staff personnel within Field

Operations Division".

(Pl.'s Resp. Ex. A; see also Peralta Aff. at 3; Pl.'s Resp. Ex. E, at 5.)

After receiving the notice, Plaintiff presented a note from Dr. Carl H. Aeby to Peter Peralta, the Assistant Chief Deputy of the Sheriff's Department. (Pl.'s Resp. Exs. C, E, at 1-2.) The note provides that Plaintiff should not be given patrol duties because of "[an] osteo-condition of [his] ankle [and] because of constant pain [and] swelling." (Pl.'s Resp. Ex. C; see also Pl.'s Resp. Ex. E, at 2.) On April 30, 2003, Defendant reassigned Plaintiff to the crime data department in the Patrol Division. (Peralta Aff. at 4; see also Pl.'s Resp. at 2.) Pursuant to Dr. Aeby's instructions, Defendant placed Plaintiff on limited duty for 90 days. (Def.'s Mot. Ex. 24.)

Presently, Plaintiff works in the Warrants Division in the Sheriff's Department. (Pl.'s Third Am. Compl. ¶ 10; see also Pl.'s Resp. at 1.)

### B. Procedural History

On April 29, 2004, Plaintiff filed a charge of discrimination with the Corpus Christi Human Relations Commission and Equal Employment Opportunity Commission ("EEOC"). (Def.'s Mot. Ex. 44.) Plaintiff alleged that from March 2003 through February 2004, he was discriminated and/or retaliated against because of his disability, race and his filing of EEOC complaints. (Id.) Plaintiff received a right-to-sue letter on or about May 31, 2005.

Within 90 days of receipt of the right-to-sue letter, on August 26, 2005, Plaintiff initiated the instant action against Defendant (D.E. 1). On April 18, 2006, Plaintiff filed his Third Amended Complaint, alleging that Defendant discriminated and/or retaliated against him (1) because he is African-American, (2) because he filed EEOC complaints, (3) because he filed workers' compensation claims, and (4) because of his political association with and his political speech in

support of Nueces County Judge Terry Shamsie. (Pl.'s Third Am. Compl. ¶¶ 19-28.)

On May 10, 2006, Defendant filed a Motion for Summary Judgment, urging the Court to grant summary judgment on the ground that Plaintiff has failed to provide any evidence to support his claims. (D.E. 41.) On June 13, 2006, Plaintiff responded to Defendant's Motion and provided the following evidence in support of his claims: (1) reassignment notice, dated April 7, 2003, (2) a letter to the EEOC from Laura Garza Jimenez, Nueces County Attorney, dated April 26, 2005, (3) a note from Dr. Carl H. Aeby, dated April 16, 2003, (4) Nueces County Civil Service Commission's Finding and Decision, dated July 21, 2004, and (5) Fact-Finding Report on Sergeant Ashley Isaac's Grievance, undated. (D.E. 44.)

### III. Discussion

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Terrebonne Parish Sch. Bd. v. Mobil Oil Corp., 310 F.3d 870, 877 (5th Cir. 2002). In considering a motion for summary judgment, the Court must draw all justifiable inferences from the evidence in the light most favorable to the nonmoving party. Quorum Health Res., L.L.C. v. Maverick County Hosp., 308 F.3d 451, 458 (5th Cir. 2002). Moreover, the Court "should assume the truth of the statements in the record," and it is inappropriate for the Court "to make credibility determinations or weigh the evidence on summary judgment." Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 993 (5th Cir. 2005).

The party seeking summary judgment bears the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of the record, which it believes demonstrate

the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995); see also Celotex Corp., 477 U.S. at 322. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmoving party's burden. See Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996).

Moreover, Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23; see also Holtzclaw v. DSC Commc'ns Corp., 255 F.3d 254, 257 (5th Cir. 2001).

### A. Title VII – Racial Discrimination

Plaintiff claims that Defendant demoted him from the position of Training Sergeant in the Training Division to the position of deputy in the Patrol Division in April 2003, and then refused to transfer him back to the Training Division from April 2003 through February 2004, because he is African-American. (Pl.'s Third Am. Compl. ¶¶ 22-24; see also Pl.'s Resp. at 5-7; Def.'s Mot. Ex. 44.)

Under Title VII, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]"

42 U.S.C. § 2000e-2(a)(1); see also Jones, 427 F.3d at 992.  In addressing a Title VII claim of racial discrimination, the Court must apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  E.g., Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005); Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003).  Under this framework, the burden lies initially with the plaintiff "to raise a genuine issue of material fact on each element of his prima facie case."  Johnson, 351 F.3d at 621.  If the plaintiff presents a prima facie case, "the defendant must then give a legitimate, nondiscriminatory reason for the employment decision."  Id. When the defendant provides a nondiscriminatory reason for the employment decision, the burden shifts back to the plaintiff to "raise a genuine issue of material fact that shows the defendant's reason may be a pretext for discrimination."  Id.  Accordingly, the summary judgment analysis begins with the question of whether, viewing the evidence in the light most favorable to the plaintiff, he has presented sufficient evidence to establish a prima facie case of racial discrimination.

### 1. **Prima Facie Case**

To establish a prima facie case of discrimination under Title VII, a plaintiff must prove that he was (1) a member of a protected class, (2) qualified for the position held, (3) subjected to an adverse employment action, and (4) treated differently from others similarly situated.  Abarca, 404 F.3d at 941 (citing Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001)).

Here, it is undisputed that Plaintiff satisfies the first two prongs of the test.  He is African-American, a member of a protected class, and he was qualified for the position of Training Sergeant. (See Pl.'s Resp. Exs. B, E.)  The Court must therefore focus on the last two prongs of the test: whether he was subjected to an adverse employment action and whether he was treated differently from others similarly situated.

### a. An Adverse Employment Action

Fifth Circuit case law establishes that an adverse employment action must be an ultimate employment decision such as hiring, granting leave, discharging, promoting, or compensating. Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004); Roberson v. Game Stop, 152 F. App'x 356, 361 (5th Cir. 2005) ("[O]ur precedent is clear that adverse employment actions are ultimate employment decisions, not the day-to-day decisions made in the context of the employment relationship.").

In this case, Plaintiff claims that on April 30, 2003, Defendant reassigned him from Training Sergeant in the Training Division to deputy in the Patrol Division, and refused to transfer him back to the Training Division from April 2003 through February 2004. (Pl.'s Third Am. Compl. ¶¶ 10-11.) Plaintiff alleges that Defendant's employment action constitutes a demotion and an adverse employment action because the new position in the Patrol Division was at a "lower pay [and] a lower rank." (Id. ¶ 11.) Plaintiff also maintains that the positions in the Patrol Division, crime data department, were "typically relegated to rookies and [employees with] discipline problems," and the positions were "significantly less prestig[ious.]" (Pl.'s Third Am. Compl. ¶¶ 11, 13.) Additionally, Plaintiff allegedly lost seniority to choose desirable shifts as a result of the reassignment. (Pl.'s Third Am. Compl. ¶ 11.)

First, Plaintiff has provided no evidence showing that the reassignment constitutes a demotion or that his new position was at a lower pay or lower rank. In fact, uncontroverted evidence in the record shows that Plaintiff retained his former title of Sergeant and received the same salary subsequent to the April 2003 reassignment. For example, the reassignment notice addresses Plaintiff as "Sgt. Ashley Isaac" and it states that Plaintiff was to be reassigned "to [a] position[] in the same

grade and salary." (Pl.'s Resp. Ex. A; see also Def.'s Mot. Ex. 24.) Moreover, the affidavit of Peter Peralta, the Assistant Chief Deputy of the Sheriff's Department, provides that (1) "Ashley Isaac's official title changed from 'training officer' (a deputy position) to 'training sergeant' in 1995 and has remained unchanged since"; and (2) "[w]hen Ashley Isaac was reassigned, he maintained his actual rank . . . was not demoted[,] his salary was not reduced, and he remained at the same pay group and step as he had been before the reassignment." (Peralta Aff. at 2.) The record also shows that before the 2003 reassignment, Plaintiff's bi-weekly salary was $1093.92 (Def.'s Mot. Ex. 26); and after the reassignment, his bi-weekly salary remained the same (Def.'s Mot. Ex. 43). Additionally, days after receiving the reassignment notice, Plaintiff complained in his April 17, 2003 letter to Peter Peralta that "due to [his] medical condition," he should not be assigned patrol duties. (Def.'s Mot. Ex. 21.) Plaintiff however made no mention of the alleged change in pay or rank in the letter. Similarly, in the April 29, 2004 charge of discrimination Plaintiff filed with the Corpus Christi Human Relations Commission and EEOC, he did not allege that his rank or pay had been lowered; rather, his only complaints were he was "not included as a Trainer," and he had been reassigned to the Patrol Division. (Def.'s Mot. Ex. 44.) Based on these undisputed evidence, the Court concludes that Plaintiff has not presented any evidence that his pay or rank was lowered as a result of Defendant's employment action.

Second, Plaintiff has provided no evidence showing that positions in the crime data department were typically filled by rookies or employees with disciplinary problems, or that his new position was less prestigious than his former one, or that he lost seniority because of the reassignment. Moreover, assuming the truth of Plaintiff's allegation that the new position was less prestigious and less desirable, Plaintiff nonetheless has not presented a genuine issue of material fact

that he suffered an adverse employment action.

The Fifth Circuit has made clear "that under Title VII principles, an employment transfer [or reassignment] may qualify as an adverse employment action if the change makes the job objectively worse." Pegram, 361 F.3d at 283. However, "in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence . . . , without more, would not lift [the plaintiff] over the hurdle of summary judgment for the purpose of an adverse employment action." Id.; see also Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003) ("[A] decision made by an employer that only limits an employee's opportunities for promotion or lateral transfer does not qualify as an adverse employment action under Title VII."); Soledad v. United States Dep't of Treasury, 304 F.3d 500, 507 (5th Cir. 2002) ("We find no error . . . in the district court's determination that the lateral transfer that [the plaintiff] complains of with no change in pay is not the type of ultimate employment action necessary for an adverse employment action in a [Title VII] claim."). Even assuming Plaintiff's position in the crime data department was less prestigious and less desirable, Plaintiff nonetheless has not presented evidence of loss in compensation, duties or benefits which could render Defendant's action an adverse employment action.

Accordingly, the Court concludes that Plaintiff has failed to present a genuine issue of material fact that he suffered an adverse employment action. As such, Plaintiff has failed to satisfy the third prong of the prima facie test for discrimination.

### b. Disparate Treatment

Assuming that Plaintiff could establish an adverse employment action, he nonetheless has

failed to meet the fourth prong of the prima facie test for discrimination, disparate treatment.

In order to show disparate treatment, a plaintiff must show that he was treated differently from employees not within his protected class "under apparently similar circumstances." <u>Baldwin v. Birmingham Bd. of Ed.</u>, 648 F.2d 950, 955 (5th Cir. 1981) ("We held in . . . a Title VII disparate treatment case . . . that the discharge of the black plaintiff and the retention of another white employee under apparently similar circumstances stated a prima facie case.").

In this case, Plaintiff alleges that after his reassignment, "Defendant continues to maintain a [T]raining [D]ivision staffed with individuals with similar qualifications as Plaintiff." (Pl.'s Resp. at 6.) Plaintiff however has provided no evidence that these individuals "with similar qualifications" are not within Plaintiff's protected class. More importantly, although Plaintiff alleges that Defendant's Training Division still exists, he has provided no evidence supporting this allegation. In fact, undisputed evidence shows that the Training Division no longer exists, and that all former employees in the Training Division have been reassigned. (Peralta Aff. at 3.) Peter Peralta's affidavit provides:

> In 2003, when Nueces County faced a budget shortfall . . . , [the Sheriff's Department] dismantle[d] the [T]raining [Division] and reassign[ed] its members. The Coastal Bend Council of Governments provided a grant to Del Mar College in Corpus Christi to provide peace officer training . . . . That training does not cost the [Sheriff's] Department or Nueces County any money, so the decision was made in 2003 not to pay salaries for the training unit members when the training could [be done] for free.
> . . . .
> . . . The [Sheriff's] Department no longer has anyone performing the job duties that Sgt. Isaac used to perform prior to April 2003, on a full-time basis . . . .

(Peralta Aff. at 3; <u>see also</u> Def.'s Mot. Ex. 17 ("[Del Mar College] will be able to provide training at no cost to the County for all TCLEOSE mandated in-service training."). Additionally, the Fact-

Finding Report submitted by Plaintiff provides that:

> The Training Division . . . comprised of a Training Director, Lt. Rylan, a Training Sergeant, Sgt. Isaac, and a Training Officer, Officer Repka . . . .
> . . . .
> At the dissolution of the Training Division, the Training Director, now in Patrol, and the Training Officer, now in the Jail, took up their new assignments but have continued to train as they did before, on occasion or as needed.

(Pl.'s Resp. Ex. E at 1; see also Peralta Aff. at 2.) The record reveals that Plaintiff has been offered the same opportunity to train on an as needed basis. (Pl.'s Resp. Ex. D ("Mr. Isaac is to be allowed to do training in the area of his expertise as needed by the Sheriff's Office."); see also Pl.'s Resp. Ex. B.)

As the undisputed evidence shows, not only has Plaintiff not presented any evidence showing that Defendant treated him differently than similarly situated employees who are outside of his protected class, the evidence actually reveals that all employees in the Training Division were reassigned, and Plaintiff was treated the same as other employees. The Court therefore concludes that Plaintiff has failed to satisfy the fourth prong of the prima facie test for discrimination.

### 2. A Legitimate, Nondiscriminatory Reason

Assuming that Plaintiff could establish a prima facie case of discrimination, he nonetheless has failed to raise a genuine issue of material fact that Defendant's legitimate, nondiscriminatory reason was merely pretextual, and that discrimination was the true reason for the employment action. See Abarca, 404 F.3d at 941.

In establishing pretext, a "plaintiff cannot succeed by proving only that the defendant's proffered reason is pretextual . . . . Rather, a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real

reason." Walton v. Bisco Indus., Inc., 119 F.3d 368, 370 (5th Cir. 1997); see also Ramirez v. Landry's Seafood Inn & Oyster Bar, 280 F.3d 576, 577 (5th Cir. 2002). To make a showing of pretext sufficient to survive summary judgment, the plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." Ramirez, 280 F.3d at 577 (emphasis in original). Moreover, the plaintiff's subjective belief that his race motivated the alleged adverse employment action is insufficient. Little v. Republic Refining Co., Ltd., 924 F.2d 93, 96 (5th Cir. 1991) (noting that the Fifth Circuit is "not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief"); Grimes v. Texas Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 141 (5th Cir. 1996). Plaintiff must offer evidence to "suggest that impermissible discrimination underlies" the employment action. Walton, 119 F.3d at 372. Plaintiff's evidence "to rebut the employer's reasons [must be] substantial, [otherwise] a jury cannot reasonably infer discriminatory intent." Id.

In this case, Defendant stated a legitimate, nondiscriminatory reason for its employment action, namely, a budget shortfall in 2003. (Pl.'s Resp. Ex. A; Peralta Aff. at 3.) Plaintiff has provided no evidence showing that the reason was false. In other words, Plaintiff has not presented evidence showing that in 2003, Defendant did not experience "a budget shortfall of several million dollars" or the Sheriff's Department was not "faced with hiring freeze and a loss of personnel." (Peralta Aff. at 3.) Similarly, Plaintiff has not presented evidence showing that "discrimination was the real reason" that motivated the employment action. See Walton, 119 F.3d at 370. The Court therefore concludes that Defendant has stated a legitimate, nondiscriminatory reason for the reassignment, and Plaintiff has failed to raise a genuine issue of material fact showing that the reason was a pretext for discrimination. See Johnson, 351 F.3d at 621.

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII discrimination claim is granted.

**B.     Title VII – Retaliation**

Plaintiff also alleges that Defendant retaliated against Plaintiff because he filed EEOC complaints. (Pl.'s Resp. at 9.)

Title VII's anti-retaliation provision forbids employer actions that discriminate against an employee because he has "opposed" a practice that Title VII forbids or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." Burlington N. & Santa Fe Ry. Co. v. White, ___ S. Ct. ___, 2006 WL 1698953, at *5 (June 22, 2006) (citing 42 U.S.C. § 2000e-3(a)). To make out a prima facie case of retaliation, a plaintiff must show "(1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action." Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 325 (5th Cir. 2002); see also Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002). Once a plaintiff meets his prima facie burden in a retaliation claim, the Court employs the same burden-shifting approach as used in a discrimination claim. See Perez, 307 F.3d at 325.

Although Plaintiff alleges that "[he] filed his EEOC complaints prior to his [alleged] demotion [or reassignment]" (Pl.'s Resp. at 6), the evidence in the record shows otherwise. The record shows that he filed EEOC complaints in April 2004, May 2005 and April 2006. (Def.'s Mot. Exs. 44-47.) However, the alleged adverse employment action, namely, the reassignment and the refusal to transfer Plaintiff back to the Training Division, occurred between April 2003 through February 2004, before the protected activities. (See Def.'s Mot. Ex. 44.) Plaintiff has provided no evidence that he engaged in protected activities before the 2003 reassignment. Because of the timing

of the alleged events, the Court cannot conclude that Plaintiff has presented a genuine issue of material fact that the protected activities Plaintiff engaged in April 2004 through April 2006 caused Defendant to retaliate against him from April 2003 to February 2004. Also, Plaintiff has not provided any evidence showing that Defendant retaliated against him, such that Defendant engaged in an "[employment] action [that] . . . might have dissuaded a reasonable [employee] from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co., 2006 WL 1698953, at *10.

Furthermore, as noted, Plaintiff has not made a showing of pretext sufficient to survive summary judgment, as he has not provided evidence showing that Defendant's legitimate, nondiscriminatory reason, "budget shortfall," was false or that Defendant's action was motivated by discriminatory reasons. See Walton, 119 F.3d at 370.

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII retaliation claim is granted.

    **C.**    **Texas Anti-Retaliation Act**

Texas Anti-Retaliation Act provides that "[a] person may not discharge or in any other manner discriminate against an employee because the employee has . . . filed a workers' compensation claim in good faith." Tex. Lab. Code Ann. § 451.001. To maintain a claim under the Texas Anti-Retaliation Act, an employee must first establish (1) he filed a workers' compensation claim, (2) he suffered retaliatory employment action, and (3) a causal link exists between the filing of the claim and the alleged retaliatory employment action. Cont'l Coffee Products Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); see also Hernandez v. Am. Tel. & Tel. Co., ___ S.W.3d ___, 2006 WL 1132903, at *2 (Tex. App.–El Paso 2005, no pet. h.). While an employee is not required

to show that the filing of the workers' compensation claim was the sole cause of the alleged retaliatory behavior, he must establish that "but for" the filing of the claim, the retaliatory action would not have occurred when it did. Garcia v. Levi Strauss & Co., 85 S.W.3d 362, 368 (Tex. App.–El Paso 2002, no pet.).

An employee may establish a causal link by either direct or circumstantial evidence. Cazarez, 937 S.W.2d at 451; Paragon Hotel Corp. v. Ramirez, 783 S.W.2d 654, 658 (Tex. App.–El Paso 1989, writ denied). Under Texas law, circumstantial evidence sufficient to establish a causal link may include: "(1) knowledge of the compensation claim by those making the decision to terminate; (2) expression of negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false." Hernandez, 2006 WL 1132903, at *2 (citing Garcia, 85 S.W.3d at 367).

Once the causal link is established and the plaintiff meets his prima facie burden, the Court employs the same burden-shifting approach as used in a Title VII discrimination or retaliation claim. Hughes Tool Co. v. Richards, 624 S.W.2d 598, 599 (Tex. Civ. App.–Houston [14th Dist.] 1981, writ ref'd n.r.e.)); Trevino v. Ramos, 197 F.3d 777, 780 (5th Cir. 1999); Hernandez, 2006 WL 1132903, at *2.

In his Response to Defendant's Motion for Summary Judgment, Plaintiff does not specify which of his workers' compensation claims he believes motivated the alleged retaliatory employment action. (See Pl.'s Resp. at 13.) The record shows that Plaintiff filed a total of five workers' compensation claims from 1993 through 2004: one claim on October 28, 1993 (Def.'s Mot. Ex. 14), one claim on August 24, 2001 (id. Ex. 15), two claims on September 12, 2003 (id. Exs. 32-33), and

one claim on September 26, 2004 (id. Ex. 40, 42).

Assuming Plaintiff could show that he suffered retaliatory employment action, namely, Defendant reassigned him then refused to transfer him back to the Training Division, he nonetheless has not provided evidence showing the required causal connection. See Garcia, 85 S.W.3d at 368; see also Cont'l Coffee Products Co., 937 S.W.2d at 450. Plaintiff maintains that he has shown causal connection through circumstantial evidence, specifically, evidence that Defendant knew Plaintiff filed claims and expressed a negative attitude toward Plaintiff's injuries. (Pl.'s Resp. at 13-14.) Plaintiff alleges that once Defendant learned of Plaintiff's injuries, its "attitude quickly changed toward Plaintiff" and it "began to make unreasonable demands [on] Plaintiff and made him obtain additional physician excuses when he had previously provided excuses documenting the same information." (Id. at 13-14.) These allegations, however, are not supported by any evidence in the record. There is no deposition, affidavit or any other evidence showing the alleged change in "attitude" or the alleged unreasonable request for documentation. It is well established that a plaintiff cannot satisfy his summary judgment burden with "conclusory allegations," "unsubstantiated assertions," or only a "scintilla" of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The Court therefore concludes that Plaintiff has not presented a genuine issue of material fact that a causal connection exists between the alleged retaliatory action and Plaintiff's filing of workers' compensation claims.

Moreover, as Defendant has stated a legitimate, nondiscriminatory reason for the employment action, Plaintiff has not met his burden of "produc[ing] controverting evidence of a retaliatory motive." Hernandez, 2006 WL 1132903, at *2 (citing Garcia, 85 S.W.3d at 368). Plaintiff has not "(1) present[ed] evidence raising a fact issue on whether the employer's stated reason was a pretext

for retaliatory action, or (2) challenge[d] the employer's summary judgment evidence as failing to prove as a matter of law that the stated reason was legitimate and nondiscriminatory." Hernandez, 2006 WL 1132903, at *2 (citing Aust v. Conroe Indep. Sch. Dist., 153 S.W.3d 222, 228 (Tex. App.–Beaumont 2004, no pet. h.)).

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's claim under Texas Anti-Retaliation Act is granted.

### D.    First Amendment Claims

Plaintiff's Third Amended Complaint states that he "had previously, openly and vocally expressed his support [for Nueces County] Judge [Terry] Shamsie and verbally stated on numerous occasions that should Judge Shamsie be elected as a county judge he would vigorously support the Nueces County Sheriff's Department." (Pl.'s Third Am. Compl. ¶ 19.) According to Plaintiff, "[b]ased on [his] political association and open verbal support for Judge Shamsie," he was reassigned from the Training Division to the Patrol Division. (Id.) Plaintiff alleges that "Defendant, intentionally and/or recklessly abridged and/or retaliated against [him] for exercising his freedom of speech, association, political belief and affiliation, as guaranteed by the First and Fourteenth Amendments . . . ." (Id. ¶ 20.) Plaintiff further alleges that Defendant's last act of retaliation occurred in April 2003. (Id. ¶¶ 19-21.)

First, the Court concludes that Plaintiff's First Amendment claims are time barred. It is well established that the "two-year statute of limitations applie[s] to [First Amendment] constitutional injury claims," and such claims accrue when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Hitt v. Connell, 301 F.3d 240, 246 (5th Cir. 2002). In this case, based on Plaintiff's allegations, his First Amendment claims

accrued in April 2003, when he learned of his reassignment. Plaintiff however initiated this action on August 26, 2005, more than two years after the claims accrued. Accordingly, the Court finds that Plaintiff's First Amendment claims are time barred.

Alternatively, not only has Plaintiff failed to offer any evidence to support his First Amendment claims, he does not even address the claims that he was retaliated for his alleged political association and political speech in his Response to Defendant's Motion for Summary Judgment. (See Pl.'s Resp. at 10-11.) Because Plaintiff has not raised these issues in his Response, any claims by him relying on these theories are considered abandoned and waived. Aldrup v. Caldera, 274 F.3d 282, 288 (5th Cir. 2001) ("[The plaintiff's] claim . . . was waived because it was not raised in his response to defendant's motion for summary judgment."); Vaughner v. Pulito, 804 F.2d 873, 877 (5th Cir. 1986) ("if a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered"); see also Whitmire v. Terex Telelect, Inc., 390 F. Supp. 2d 540, 548 (E.D. Tex. 2005) (the plaintiff waived his claims when he did not raise or brief issues related to those claims in his response to motion for summary judgment).

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's First Amendment claims is granted.

IV.  **Conclusion**

For the reasons stated above, the Court GRANTS Defendant's Motion for Summary Judgment (D.E. 41).

SIGNED and ENTERED this 12th day of July, 2006.

_____
Janis Graham Jack
United States District Judge